| | |
|---|---|
| 1 | David C. Parisi (SBN 162248) |
| 2 | Suzanne Havens Beckman (SBN 188814) |
|   | PARISI & HAVENS LLP |
| 3 | 15233 Valleyheart Drive |
|   | Sherman Oaks, California 91403 |
| 4 | Telephone: (818) 990-1299 |
| 5 | Fax: (818) 501-7852 |
|   | dcparisi@parisihavens.com |
| 6 | shavens@parisihavens.com |
| 7 | Attorneys for Plaintiff Melinda Amezcua, |
|   | individually and on behalf of a class |
| 8 | of similarly situated individuals |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MELINDA AMEZCUA, individually and on behalf of a class of similarly situated individuals, | CASE NO. C 08 04390 PVT |
| Plaintiff, | **PLAINTIFF MELINDA AMEZCUA'S NOTICE OF MOTION TO REMAND AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND** |
| v. | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a Delaware general partnership, MOBILEFUNSTER, INC. d/b/a FUNMOBILE, a Delaware corporation, FUNMOBILE GAMES, INC., a Delaware corporation, | Date:   December 16, 2008<br>Time:   10:00 a.m.<br>Room:   Courtroom 5, 4th Floor<br>Judge: Patricia V. Trumbull |
| Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on December 16, 2008, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Patricia V. Trumbull in Courtroom 5 of the United States District Court for the Northern District of California, located at U.S.

1  Courthouse, 280 South 1st Street, San Jose, California 95113, Plaintiff Melinda Amezcua will
2  and hereby does move under 28 U.S.C. § 1447(c) for an order remanding this action to the
3  Superior Court of the State of California, County of Santa Clara.
4
       Defendant, Mobilefunster, Inc., as the removing party, bears the burden of showing by
5  a preponderance of the evidence that removal is proper.  As set forth in Plaintiff's
6  Memorandum of Points and Authorities in Support of her Motion to Remand, Defendant has
7  not met that burden, failing to establish the amount in controversy exceeds $5,000,000 as
8  required by the Class Action Fairness Act ("CAFA").  Therefore, remand to state court is
9  appropriate.
10
11  DATED: October 20, 2008                          **PARISI & HAVENS, LLP**
12
13                                                   By: ___s/ David C. Parisi_____
                                                         DAVID C. PARISI
14                                                       One of the Attorneys for Melinda
15                                                       Amezcua, individually and on behalf
                                                         of a class of similarly situated
16                                                       individuals

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Relying solely on a figure characterized as *total revenue for the first half of 2008*, Defendant Mobilefunster, Inc. ("Funmobile") speciously asserts that it has met its burden of showing that $5,000,000 is in controversy, thereby triggering jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1453 (2005). Federal law requires Funmobile to demonstrate the amount in controversy exceeds the $5,000,000 threshold by a preponderance of the evidence. That said, the paucity of evidence in Funmobile's Notice of Removal requires the Court to remand this matter to the Superior Court of Santa Clara County.

## Background

This case arises out of the relatively recent developments in cellular telephony that allow cellular phones and other mobile devices to receive and operate what is known as premium mobile content (e.g. ringtones, sports scores, daily horoscopes, stock tips, etc.). (Compl. ¶ 8.) This case specifically concerns Funmobile's "cramming"—the process by which mobile content providers collect money from cell phone customers for services the customers never actually ordered—and its resultant profiting. (Compl. ¶ 14.)

Mobile content is typically purchased via internet websites, through promotions sent directly to cellular devices, and by other means. Customers purchasing mobile content are charged subscription fees by content providers like Funmobile, fees that ultimately appear on the customers' cell phone bills. (Compl. ¶¶ 10, 14-15.) Because content providers like Funmobile often lack the relationships necessary to transact directly with wireless carriers, they contract with third parties known as aggregators. (Compl. ¶ 10.) Aggregators facilitate content providers' access to wireless carriers' networks and billing systems. (Compl. ¶ 10.) Accordingly, to bill a cellular subscriber, all a content provider must do is send a cellular

number, along with the dollar amount to be charged, to an aggregator who in turn instructs the appropriate wireless carrier to place the charge on the associated account. (Compl. ¶¶ 10, 14-15.) Upon receipt of payment for such charges, the wireless carrier keeps a portion of the proceeds and remits the remainder to the aggregator, who also retains a percentage of the payment before remittance to the content provider. (Compl. ¶ 10.)

Here, Plaintiff Melinda Amezcua alleges Funmobile billed her for mobile content she never authorized. (Compl. ¶¶ 26-30.) Given the ease with which consumers can be charged, it is not surprising that a portion of mobile content revenue has been illegitimately and unlawfully collected. (Compl. ¶ 11.) The primary sources of this problem are often content providers' misleading marketing and the industry's largely inadequate billing systems. (Compl. ¶ 11.). Adding to those problems is the form in which mobile content charges appear on consumers' wireless bills—often as indistinguishable line-items. (Compl. ¶ 15.) As a function of that non-descript form, many consumers are unaware of the charges until months of continuous fees have elapsed. (Compl. ¶ 15.)

Plaintiff brought this putative class action to combat just those problems, seeking to recover the unauthorized charges collected by Defendants and to prevent future unauthorized billing. On September 18, 2008, Funmobile filed a "Notice of Removal," contending that CAFA gives the Court jurisdiction over this case. Plaintiff agrees that Funmobile has shown minimal diversity and that the lawsuit concerns over 100 persons. Funmobile has not, however, proven by a preponderance of the evidence that this matter satisfies CAFA's requirement that $5,000,000 be in controversy. Accordingly, this case should be remanded to the Superior Court of Santa Clara County.

**Argument**

**A. Funmobile bears the burden of establishing CAFA jurisdiction.**

CAFA gives federal courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," where there are at least 100 members of the putative class, and at least one member of the putative class is a citizen of a state different from the defendant.  28 U.S.C. § 1332(d).

As the removing party, Funmobile bears the burden of proving by a preponderance of the evidence that the CAFA requisites have been satisfied, specifically that the amount in controversy exceeds $5,000,000.  *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007).  There is, however, a "strong presumption against removal jurisdiction," and therefore, removal statutes are to be construed narrowly.  *See Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal. . . .").

It has long been established that the proponent of jurisdiction must provide "competent proof" in support of its jurisdictional assertions.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  In determining whether jurisdiction exists, courts may look to the complaint itself, or where jurisdiction is not facially apparent, "require parties to submit summary-judgment-type evidence. . . ."  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).  Mere conclusory allegations, however, are not sufficient to support removal jurisdiction.  *Id.*; *Gaus*, 980 F.2d at 567.

**B. Funmobile has failed to provide sufficient evidence of the amount in controversy.**

In its Notice of Removal, Funmobile asks this Court to assume that over $5,000,000 is in controversy, expecting the Court to proceed without any evidentiary basis for its

jurisdiction.  Funmobile does make reference to its *total revenue* for the first half of 2008 ($29.3 million), but such a reference mischaracterizes the monies in controversy.  (Notice of Removal ¶ 19.)  Funmobile freely admits in its removal papers that Plaintiff's Complaint does not seek to recoup Funmobile's *entire* mobile content revenue; but rather, only revenue generated through charges that were in fact *unauthorized*.  (*See* Notice of Removal ¶ 19.)  Unless Funmobile seeks to represent that $29.3 million of its revenue in the first six months of this year was derived from illegitimate and unlawful billing, it has not provided any basis upon which jurisdiction may rest.  At least one other district court has rejected similar arguments, declining to exercise jurisdiction under CAFA in a case involving similar claims.  *Fiddler v. AT&T Mobility, LLC*, No. 08-416, 2008 WL 2130436 (N.D. Ill. May 20, 2008) (rejecting arguments that the percentage of "total gross revenue from third-party mobile content" was enough to meet defendants' burden of proof with respect to the amount in controversy).

      Nor can Funmobile rely upon "constructive extrapolations" (certainly not without providing actual figures) or mere language of the Complaint to meet its burden.  *See Lowdermilk*, 479 F.3d at 1002.  That sort of "speculation and conjecture" gets Funmobile no closer to satisfying its burden.  *Id.*

      Likewise, the idea that Plaintiff's Complaint in anyway places Funmobile's entire mobile content revenue at issue is unfounded.  Regardless of Funmobile's reading of Plaintiff's Complaint, Plaintiff does not allege that Funmobile has a "systematic practice to levy unauthorized charges" against all of its customers.  Therefore, reliance upon *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008) is misplaced.  Rather than making the "standard practice" allegation found to place a defendant's entire revenue in controversy in

*Spivey*, Plaintiff merely suggests that the process through which Defendant imposes and collects unauthorized charges is due to an inherent flaw in its billing system.

### C. Reliance upon Plaintiff's prayer for injunctive, punitive, and other relief does not satisfy Funmobile's burden.

Funmobile may not rely upon a prayer for certain other relief to meet the amount in controversy without providing an evidentiary basis or valuation of the relief requested. For example, in *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001), the defendant sought to assert the cost of requested injunctive relief to meet the jurisdictional threshold. In that context, the *Kanter* court recognized the proponent of removal continues to bear the burden of proof. *Id.* Funmobile has not even begun to opine as to the cost the requested injunctive relief with respect to the putative class.

Furthermore, amounts for punitive damages may not be considered at this point because they are derived from the amount of compensatory damages awarded. *See e.g. California v. Altus Finance S.A.*, 540 F.3d 992 (9th Cir. 2008); *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720 (7th Cir. 2004); *see also Burk v. Medical Savings Ins. Co.*, 384 F.Supp.2d 1063, 1069 (D. Ariz. 2004) (proponent of removal bears same burden of proof with respect to punitive damages). Because Funmobile has failed to even attempt to calculate what a compensatory damages award might be, there is no basis with which to value any punitive relief.

Finally, while it is true that attorneys' fees are included in the amount in controversy, the proper estimate of attorneys' fees is the amount of fees incurred up until the time of removal. *See Conrad Assoc. v. Hartford Accen. & Indem. Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal. 1998); *Foster v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198 at *4 (N.D. Cal. 1999). At this time, it is unlikely that Plaintiff's attorneys' fees contribute substantially to the

$5,000,000 threshold; in any event, Funmobile has not shown that they do.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court remand the underlying matter to the Superior Court of the State of California, County of Santa Clara.

Dated: October 20, 2008

Respectfully submitted,

By: s/ David C. Parisi_____
 DAVID C. PARISI
 One of the Attorneys for Melinda Amezcua,
 individually and on behalf of a class of
 similarly situated individuals