**E-Filed 5/4/09**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MELINDA AMEZCUA, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a Delaware general partnership, MOBILEFUNSTER, INC. d/b/a FUNMOBILE, a Delaware corporation, FUNMOBILE GAMES, INC., a Delaware corporation,<br><br>Defendant. | Case Number C 08-4390 JF (PVT)<br><br>**ORDER[1] GRANTING MOTION TO REMAND** |

## I. BACKGROUND

Plaintiff Melinda Amezcua ("Plaintiff") filed this putative class action on May 30, 2008 in the Santa Clara Superior Court, alleging a scheme of fraudulent billing in the mobile content industry and naming Cellco Partnership d/b/a Verizon Wireless ("Verizon") as the sole defendant. On August 20, 2008, plaintiff filed a First Amended Class Action Complaint

---

[1] This disposition is not designated for publication in the official reports.

("Amended Complaint") in the state court, adding Mobilefunster and Funmobile Games, Inc. (collectively, "Funmobile") as defendants. Plaintiff alleges that Funmobile is a "mobile content provider" that creates and distributes, among other things, music ringtones, wallpapers, games and news. She claims that Funmobile fraudulently billed her for mobile telephone content that she did not authorize. She explains that when a consumer purchases content from a mobile content provider, the content provider forwards the consumer's cell phone number along with the amount to be charged to a billing aggregator. The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone. Plaintiff alleges, inter alia, that Funmobile committed fraud by charging consumers for unwanted and unauthorized mobile content services. She seeks compensatory and punitive damages, costs and attorneys' fees, pre- and post-judgment interest, and injunctive and declaratory relief. The complaint does not state the amount of the requested recovery.

On September 18, 2008, Funmobile removed the action to this court on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1453, which grants federal courts original jurisdiction over actions where there is "minimal" diversity, there are one-hundred or more class members, and the aggregate amount in controversy exceeds $5 million. *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 680 (9th Cir. 2006). Plaintiff moves to remand on the ground that Funmobile has not carried its burden to establish that the aggregate amount in controversy exceeds $5 million.

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action to federal court if the plaintiff could have filed the action in federal court initially. 28 U.S.C. § 1441(a); *see also Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir.1988). The removal statute is strictly construed against removal. *Id*. The matter therefore should be remanded if there is any doubt as to the existence of federal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and cost, and is a class action [with minimal diversity]." 28 U.S.C. § 1332(d)(2).

"[U]nder § 1332(d)(6), the claims of class members are aggregated to determine whether the amount in controversy exceeds $5,000,000." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 684 (9th Cir. 2006). When it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

### III. DISCUSSION

Funmobile argues that the amount in controversy includes its total revenue for the first half of 2008 ($29.3 million). Funmobile cites *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008) in support of its argument. In *Spivey*, the complaint alleged that plaintiff Spivey's credit card was charged without authorization and that defendant Vertrue's practices were common to all class members. *Id.* at 985. Critically, the complaint also alleged that "making unauthorized charges is a standard practice at Vertrue", and that the company "'systematically' submits authorized charges." *Id.* at 983, 985. The Seventh Circuit held that the allegations placed the propriety of all of Vertrue's charges in controversy. *Id.* at 985-86. In the instant case, Funmobile argues that the complaint similarly places Funmobile's revenue in controversy by alleging that Funmobile has "a practice of charging cellular telephone customers for [unauthorized] . . . products and services." Complaint, at 1. Funmobile argues that because this allegation essentially is aimed at Funmobile's standard content delivery and billing system, it follows that as in *Spivey*, its entire revenue should be presumed to be in controversy.

Funmobile's reliance on *Spivey* is misplaced. First, *Spivey* is not binding on this Court.[2] Second, Plaintiff's allegations are distinguishable from those which led the *Spivey* court to hold that all of the defendant's revenues had been placed at issue. Funmobile highlights the

---

[2] Indeed, it is questionable whether the Seventh Circuit's premise that the defendant's burden with respect to the amount in controversy merely is "a pleading requirement, not a demand for proof," *Spivey*, 528 F.3d at 986, can be squared with the Ninth Circuit's requirement that under CAFA the defendant must "provide *evidence* establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional] amount," *Guglielmino*, 506 F.3d at 699 (emphasis added) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).

3

"practice" allegation, Amended Complaint, at 1, and the allegation that Funmobile "continually caus[es]" customers to be billed without authorization. Amended Complaint, ¶ 70. But these allegations shed little light on the extent of the alleged "practice." That Funmobile engages "continually" in the alleged practice does not establish what percentage of Defendants' revenues properly may be considered "unauthorized." The allegation that Funmobile's practices result in the billing of a "large" number of people for unauthorized services, Amended Complaint, ¶¶ 12, 14, is no more helpful. While Funmobile's theories with respect to the jurisdictional amount do not lack plausibility, "[a] district court . . . is not permitted to engage in th[e] type of guesswork" that Funmobile urges upon this Court. *Gray v. Cellco P'Ship*, No. 08-60146, at *4 (S.D. Fla. Mar. 25, 2008) (citing *Lowrey v. Alabama Power Co.*, 483 F.3d 1184, 1210 (11th Cir. 2007)).

The allegations in Plaintiff's Amended Complaint are similar to those in *Coren v. Mobile Entm't, Inc.*, No. C 08-05264 JF (PVT), 2009 WL 764883 (N.D. Cal. Mar. 19, 2009), an action in which this Court recently granted the plaintiff's motion to remand. In *Coren*, the plaintiff alleged that the defendant content providers "routinely process charges for mobile content that have not been authorized by the charged party" and "have for years been systematically, repeatedly and without authorization, billing their customers for purchase of products and services no agreed to by those customers." *Id*. at *2. The Court concluded that the defendants characterized the complaint too broadly, in that the complaint attacked only unauthorized charges, as opposed to all revenues. *Id*. Thus, the Court declined to assume that all of the defendants' revenues were in controversy. *Id*; *see also Gray*, No. 08-60146, at *4 (holding that even where the plaintiff "allege[d] that Verizon, systematically and repeatedly, and without authorization, ha[d] been billing its customers for the purchase of products and services not agreed to by the customers . . . and ha[d] been profiting significantly through this practice," the defendant failed to establish the amount in controversy by a preponderance of the evidence); *Wallace v. Universal Music Group, Inc.*, No. CV 08-4553 (C.D. Cal. Sept. 5, 2008) (rejecting as "mere speculation" attempt to demonstrate amount in controversy by calculating arbitrary percentage of defendant's revenues).

In *Coren*, as in the instant case, the defendants also asserted that the plaintiff's request for

punitive damages and attorneys' fees provided a basis for finding that the amount-in-controversy requirement had been satisfied. *Coren*, 2009 WL 764883, at *2. The Court rejected this argument, noting that while both classes of recovery *generally* were suitable for use in calculating the amount in controversy, the speculative nature of the compensatory damages prevented meaningful reference to punitive damages or fees. *Id.*; *see also Gray*, No. 08-60146, at *4-5 (rejecting reliance on request for punitive damages where amount of compensatory damages remained speculative). The case at bar is no different.

Recognizing the futility of making legal and factual arguments that this Court recently rejected in *Coren*, Funmobile attempts to carry its burden by reference to a settlement approval declaration made by Plaintiff's counsel in a similar mobile content fraud action in South Florida. Counsel for the plaintiffs in the South Florida action also represents Plaintiff in the instant action. In explaining why the $12 million settlement reached in the South Florida action was fair and reasonable, counsel stated that "industry wide, the average amount of unauthorized charges is approximately twenty percent." *See* Ex. B to Motion for Administrative Relief, at ¶ 19. Funmobile now applies that "industry-wide" percentage to its $29.3 million in revenue (which it notes was earned during the first half of 2008 alone), deriving a damages figure of $5,860,000.

While the principle underlying Funmobile's calculation is sound, the statement in the declaration is not competent evidence of the extent of fraud in the mobile content industry, let alone in the billing practices of Funmobile. *Cf. Guglielmino*, 506 F.3d at 699 (requiring that defendants "provide *evidence* establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional] amount" (emphasis added) (citation omitted)). The statement does not establish, for example, where Funmobile's practices are situated along the "industry-wide" continuum of supposed fraud. Even if the statement had probative value, it is not properly the subject of judicial notice. "There is a mistaken notion that taking judicial notice of court records . . . means taking judicial notice of the existence of facts asserted in every document of a court file, including pleadings and affidavits. The concept of judicial notice requires that the matter which is the proper subject of judicial notice be a fact that is not

5

reasonably subject to dispute. Facts in the judicial record that are subject to dispute, such as allegations in affidavits, declarations, and probation reports, are not the proper subjects of judicial notice even though they are in a court record." *Townes v. Paule*, 407 F. Supp. 2d 1210, 1217 n.5 (S.D. Cal. 2005) (quoting B. Jefferson, *California Evidence Benchbook* (3d ed. 2003 update), § 47.10). Thus, although a court may take judicial notice of court records, it may not take judicial notice of the truth of the contents of all documents found therein. *See M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983). The statement that approximately twenty percent of all mobile content billing is fraudulent hardly is a "fact" not subject to dispute. Accordingly, the Court may not consider that "fact." This being the case, the instant action truly is indistinguishable from *Coren*, and it, too, must be remanded.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand will be granted. The clerk shall close the file and transmit the necessary materials to the state court.

**IT IS SO ORDERED.**

DATED: 5/4/09

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served electronically upon the following persons:

2  Dan Edward Marmalefsky     dmarmalefsky@mofo.com, skay@mofo.com

3  David Christopher Parisi     dcparisi@msn.com, shavensbeckman@msn.com

4  Geoffrey Aaron Graber     ggraber@mofo.com, ppomerantz@mofo.com

5  Michael S. Doluisio     michael.doluisio@dechert.com

6  Penelope Athene Preovolos     ppreovolos@mofo.com, kfranklin@mofo.com

7  Sarah Wager     sarah.wager@dechert.com, carol.skogstrom@dechert.com

8  Notice has been delivered by other means to:

9  Karen C. Daly
   Dechert LLP
10 Cira Centre
   2929 Arch Street
11 Philadelphia, PA 19104

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-4390 JF (PVT)
ORDER GRANTING MOTION TO REMAND
(JFLC3)